## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**RESCUE MENTAL HEALTH**
**& ADDICTION SERVICES,**                    CASE NO. 3:22 CV 640

    Plaintiff,

    v.                                          JUDGE JAMES R. KNEPP II

**MENTAL HEALTH & RECOVERY**
**SERVICES BOARD OF LUCAS**
**COUNTY, et al.,**
                                             **MEMORANDUM OPINION AND**
    Defendants.                              **ORDER**

### INTRODUCTION

Pending before this Court is a motion for judgment on the pleadings (Doc. 8) filed by Defendants Mental Health & Recovery Services Board of Lucas County and its Executive Director, Scott Sylak, in this civil rights and breach of contract case. Plaintiff Rescue Mental Health & Addiction Services opposed (Doc. 10) and Defendants replied (Doc. 12). Jurisdiction is proper under 28 U.S.C. §§ 1331 and § 1367.

For the reasons discussed below, Defendants' motion is granted as to Plaintiff's substantive due process claim and denied as to all other claims.

### BACKGROUND

Overview

Presuming all factual allegations in the Complaint to be true, the facts are as follows. Plaintiff was a non-profit provider of community based mental health and addiction services located in Lucas County, Ohio. (Doc. 1, at ¶ 1). Services Plaintiff provided included hotline and emergency intake, short-term crisis counseling, residential mental health and addiction care for

adults and children, and prescreening individuals in jail. *Id.* Prior to the events underlying this action, Plaintiff contracted to provide these services with Defendant Mental Health & Recovery Services Board of Lucas County ("Board"). *Id.* Plaintiff was the primary provider of the above-mentioned services in Lucas County for more than 50 years until Defendants gave notice the contract would not be renewed in 2021. *Id.* at ¶¶ 5, 59.

Defendants' Request for Proposal

On November 2, 2020, the Board posted a Request for Proposal ("RFP") for services Plaintiff had provided under its contract. *Id.* at ¶ 38. The RFP expressly solicited competitive bids. *Id.* at ¶¶ 38, 45. The parties agree the relationship between Plaintiff and the Board was governed by Ohio Revised Code Chapter 340 ("Chapter 340"). *Id.* at ¶ 2; Doc. 8, at 2. Plaintiff is entitled to 120-day notice under Chapter 340, among other criteria, if the Board chooses not to renew its contract with Plaintiff for the following year. (Doc. 1, at ¶ 4); *see also* Ohio Rev. Code § 340.036(D); Doc. 8, at 2. The Board's RFP had a decision date after the 120-day notice period would have passed. (Doc. 1, at ¶ 46).

On December 6, 2020, Plaintiff submitted a Letter of Intent to Defendants indicating its intention to compete in the competitive bid process set forth in the RFP. *Id.* at ¶ 48. However, Plaintiff also stated the RFP process was at odds with the requirements of Chapter 340, and submitted its Letter of Intent with the caveat that it reserved all rights to challenge the RFP process. *Id.* The Board responded through counsel stating Chapter 340 only barred competitive processes and the RFP was a mere request for information. *Id.* at ¶ 49. Plaintiff alleges this characterization was inaccurate as evidenced by public statements to stakeholders, potential bidders, and posts on its own website stating the RFP sought competitive bids. *Id.* As a result,

Plaintiff alleges it was forced to partake in the RFP process and submitted its bid on January 18, 2021. *Id.*

In its RFP bid, Plaintiff reiterated its position that the RFP competitive bid process was improper. *Id.* at ¶ 50. In the aftermath of the competitive bid process opening, Plaintiff sustained detrimental harm to its operational capabilities including the inability to retain staff, recruit new staff members, or retain contracts and funding from referral services. *Id.* at ¶ 51. Plaintiff attributes these staffing and resource issues directly to the actions of Defendants and stated the message of the publicly announced RFP process was clear: Defendants sought to terminate Plaintiff's services. *Id.* Because "no reasonable professionals would sign on to an agency threatened with near-term termination", Plaintiff's operational hardships were exacerbated. *Id.*

Temporary Restraining Order and Injunction

Plaintiff initially filed suit in the Franklin County Court of Common Pleas. *Id.* It sought a temporary restraining order ("TRO") against Defendants, which was denied. *Id.* at ¶ 53. During the TRO hearing, the Board testified the RFP was not a competitive process and the Board had concerns over Plaintiff's services. *Id.* at ¶ 54. However, during discovery, Defendant Sylak admitted under oath the RFP was a competitive bidding process. *Id.* at ¶ 55. Contrary to its position at the TRO hearing, Sylak stated under oath there were "concerns" with Plaintiff's services. *Id.* at ¶ 56. Defendants produced documents showing low Medicaid billings from Plaintiff even though the contract with Defendants did not include Medicaid. *Id.* Defendants did not identify any communications showing the concerns were ever brought to Plaintiff's attention. *Id.* at ¶ 57.

While the Franklin County proceedings were ongoing, on February 17, 2021, the Board sent Plaintiff a "Notice of Substantial Changes to Fiscal Year 2022 Service Contract". *Id.* at ¶ 59.

At a hearing in the Franklin County court, Defendants represented the February 17, 2021 document was not notice of non-renewal, but rather was notice of a substantial change to material elements of the agreement. *Id.* Sylak stated that a final decision on the renewal would be made on April 30, 2021, 60 days before the expiration of Plaintiff's contract. *Id.* at ¶ 63. The Franklin County court enjoined Defendants' RFP because it found a negotiating imbalance. *Id.* at ¶ 66.

Termination of Plaintiff's Services

Following the injunction, the Board engaged in a series of acts that Plaintiff argues were adverse and retaliatory, including six-figure payments to all of the Board's providers except Plaintiff for capital improvements and system upgrades. *Id.* at ¶ 68. Plaintiff alleges the Board represented it chose to withhold these funds to Plaintiff because of ongoing contract issues. *Id.* Then, on May 4, 2021, the Board passed a resolution authorizing Sylak to amend, supplement, revise, or issue a new 120-day notice to Plaintiff at his "sole discretion". *Id.* at ¶ 69.

On May 10, 2021, Sylak sent Plaintiff a notice purporting to be supplemental to the February 17, 2021, letter. *Id.* at ¶ 71. In the notice, Defendants offered Plaintiff two options: (1) agree to a six-month contract extension, with no further information provided; or (2) terminate the contractual relationship. *Id.* The May 10, 2021, notice referenced Plaintiff's failure to provide substantive evidence demonstrating it had addressed Defendants' concerns following the February 17, 2021, letter. *Id.* at ¶ 72. Plaintiff maintains substantive issues were never identified or disclosed and Defendants' proffered reasons masked its true intentions to terminate Plaintiff's contract without negotiation. *Id.* at ¶ 73.

Following the May 10, 2021, notice, Plaintiff's inability to properly staff its operations grew. *Id.* at ¶ 74. Plaintiff asserts the Board's public statements undermined Plaintiff's hiring

capabilities, as it could not guarantee it would be operating in six months. *Id.* Because of these shortages, Plaintiff did not accept the six-month contract extension. *Id.* Then, on May 26, 2021, 35 days prior to the June 30, 2021, expiration of the contract, Defendants sent a self-described "supplemental" notice stating the contract would not be renewed for 2022. *Id.* However, the notice also included a provision that Plaintiff shall continue to provide its services for three months after termination at a cost point set unilaterally by Sylak. *Id.* at ¶ 76. At the time of this notice, it appeared Plaintiff's successor was not prepared to take over by the time of contract expiration. *Id.*

Plaintiff had more than 100 employees, many of whom were Service Employees International Union members. *Id.* at ¶ 78. Due to 30-day termination notice requirements between Plaintiff and the union employees, Plaintiff was required to provide notice on May 27, 2021, of the impending layoffs. *Id.* Defendants made public statements via its website indicating it offered multiple contract extensions but Plaintiff "chose to close instead". *Id.* at ¶ 80. In the face of a looming protest planned by community members concerned with crisis care services in Lucas County, Defendants made a public statement that placed blame on Plaintiff for "closing with one month's notice" and included multiple statements denigrating the character and motivations of Plaintiff's leadership. *Id.* Plaintiff maintains it was forced to close on short notice due to Defendants' actions which resulted in its staffing and resource shortages. *Id.* at ¶ 81.

Procedural History

Plaintiff filed the Franklin County action on February 4, 2021, wherein it pursued claims for breach of contract and violations of Chapter 340. *Rescue Mental Health & Addiction Serv. v.*

5

*Mental Health Recovery Serv. Bd. of Lucas Cnty.*, No. 21-743 (Franklin Cnty. Ct. Com. Pl.)[1]. During the state court proceedings, Defendants filed a motion for summary judgment. *Id.* In its order thereon, the court held: (1) the February 17, 2021, notice from Defendants satisfied the notice requirements of R.C. 340.036(D) (Doc. 5-3, at 34); (2) the February 17, 2021, notice was not sufficient under the contract (*id.*); the contract allows for supplements to the 120-day notice (*id.* at 37); (3) the May 10 and 26, 2021, notices were supplemental in nature (*id.*); (4) the court could not decide as a matter of law if the supplemental notices cured the defects of the February 17, 2021, notice (*id.* at 38); and (5) the Board was permitted to delegate authority to Sylak (*id.* at 39-40). Plaintiff ultimately voluntarily dismissed the Franklin County action on January 21, 2022.

Plaintiff filed the instant case on April 20, 2022, bringing claims for violations of its procedural and substantive due process rights, First Amendment retaliation, and state law claims for breach of contract and violations of Ohio Rev. Code § 340.036(D). (Doc. 1).

## STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Civil Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion. *Coley v. Lucas County*, 799 F.3d 530, 536-37 (6th Cir. 2015). When deciding either motion, this Court presumes all factual allegations in the complaint to be true and makes all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). A complaint will only survive if it states a plausible claim for relief on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

---

1. This Court takes judicial notice of the state court proceedings which are available at https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/caseSearch?bvBDCQCTsq8quzKB1ey E

6

To do so, the complaint must state factual allegations that allow this Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (citing *Iqbal*, 556 U.S. at 678). A complaint is not required to contain "detailed factual allegations," but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555.

**DISCUSSION**

Plaintiff brings five claims against Defendants: (1) deprivation of property and liberty interests without procedural due process under 42 U.S.C. § 1983; (2) deprivation of property and liberty interests without substantive due process under 42 U.S.C. § 1983; (3) First Amendment retaliation under 42 U.S.C. § 1983; (4) violation of Chapter 340 by the Board; and (5) breach of contract by the Board. Defendants move to dismiss all of Plaintiff's claims. For the following reasons, Defendants' motion is granted as to the substantive due process claim and denied as to all other claims.

Procedural Due Process

Plaintiff argues Defendants unlawfully deprived it of a constitutionally protected benefit conferred under § 340.036(D). (Doc. 10, at 16). Defendants rebut stating § 340.036(D) does not confer a constitutionally protected interest because localities maintain discretion to terminate contracts and the statute does not contain an automatic renewal provision. (Doc. 8, at 15-16); (Doc. 12, at 8).

To establish a procedural due process violation under 42 U.S.C. § 1983, a plaintiff must demonstrate three elements: (1) it had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) it was deprived of protected interest within the meaning of the due process clause; and (3) the state did not afford it adequate procedural rights

7

before depriving it of its protected interest. *Wedgewood L.P. I v. Twp. of Liberty*, 610 F.3d 340, 350 (6th Cir. 2010).

*Protected Interest*

"[P]roperty interests are not created by the Constitution itself, but rather by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (internal quotations omitted). "[A] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Id.* (citing *Wedges/Ledges of Calif., Inc. v. City of Phoenix*, 24 F.3d 56, 62-63 (9th Cir. 1994) (explaining that existence of a reasonable expectation of entitlement is determined by whether language of the statute conferring the benefit is framed in mandatory terms and whether statute imposes substantive constraints on official discretion to award the benefit)). To prevail, a plaintiff must "point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the [state] to rescind the benefit." *Id.* at 410.

The Parties agree Chapter 340 governs the relationship. (Doc. 10, at 4); (Doc. 8, at 3). Chapter 340 states, in relevant part:

> If a party to a contract entered into under this section proposes not to renew the contract or proposes substantial changes in contract terms, the other party shall be given written notice at least one hundred twenty days before the expiration date of the contract. During the first sixty days of this one-hundred-twenty-day period, both parties shall attempt to resolve any dispute through good faith collaboration and negotiation in order to continue to provide services and supports to persons in need. If the dispute has not been resolved sixty days before the expiration date of the contract, either party may notify the director of the unresolved dispute. The director may require both parties to submit the dispute to another entity with the cost to be shared by the parties. Not later than twenty days before the expiration date of the contract or a later date to which both parties agree, the other entity shall issue to the parties and director recommendations on how the dispute may be

8

resolved. The director shall adopt rules establishing the procedures of this dispute resolution process.

Ohio Rev. Code § 340.036(D). Plaintiff argues the guidelines set forth in § 340.036(D) confer a benefit and limit the Board's discretion to rescind the benefit. (Doc. 10, at 16). Plaintiff argues it is entitled to automatic renewal of the contract, and the funding that goes with it, unless the conditions of non-renewal are satisfied. *Id.* Defendants offer two arguments in response.

First, Defendants assert the expectation of renewal is not a protected interest because the Board had discretion to not renew Plaintiff's services. (Doc. 8, at 15-16). However, the plain language of Ohio Revised Code § 340.036 includes explicit criteria a party to a contract governed by Chapter 340 must follow. If one party wishes to terminate the relationship, (1) it must provide 120-day notice before the expiration of the contract; (2) shall attempt to resolve any disputes between the parties using good faith collaboration in order to continue service to those persons in need of assistance; (3) if not resolved 60 days before expiration, either party may notify the director who may require the parties submit to dispute resolution. The dispute resolution entity must submit a recommendation on how the dispute may be resolved no later than 20 days before the expiration of the contract; and (4) the director shall adopt rules establishing dispute resolution procedures. *Id.* These requirements demonstrate the legislature did not intend for discontinuance of relationships governed by § 340.036(D) to be "wholly discretionary" on the part of state entities such as the Board. *Med Corp., Inc.*, 296 F.3d at 409.

The Supreme Court's holding in *Logan v. Zimmerman Brush Co.*, explains the characteristics of a "property interest" for purposes of a procedural due process claim. 455 U.S. 422 (1982). In *Logan*, the plaintiff "was discharged by [defendant-appellee], purportedly because [plaintiff's] short left leg made it impossible for him to perform his duties as a shipping clerk. Five days later, [plaintiff], acting *pro se*, filed a charge with the Commission alleging that his

9

employment had been unlawfully terminated because of his physical handicap." *Id.* at 426. Under Illinois state law, after a complainant filed a charge with the commission, the "Illinois Fair Employment Practices [Act] . . . gave the Commission 120 days within which to convene a factfinding conference designed to obtain evidence, ascertain the positions of the parties, and explore the possibility of a negotiated settlement." *Id.* at 424. *Logan* held that "[t]he hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.' . . . [t]he types of interests protected as 'property' are varied and, as often as not, intangible, relating 'to the whole domain of social and economic fact.'" *Id.* at 430. Using these principles, the Supreme Court held that "[t]he right to use the FEPA's adjudicatory procedures shares these characteristics." *Id.* at 431.

FEPA, the statute at issue in *Logan*, required the government to within "120 days . . . convene a factfinding conference designed to obtain evidence, ascertain the positions of the parties, and explore the possibility of a negotiated settlement". Similarly, § 340.036(D) mandates that "both parties shall attempt to resolve any dispute through good faith collaboration and negotiation". Collaboration and negotiation, with an aim at dispute resolution, are closely analogous to the procedural rights in *Logan*. Further, § 340.036(D) includes specific timeframes by which each party must comply with certain aspects of the negotiations. Because the Supreme Court held that "adjudicatory procedures [prescribed in state statute are] a species of property protected by the Due Process Clause", *Logan*, 455 U.S. at, 424, this Court finds the parameters set forth in § 340.036(D) are sufficient to establish a protected interest. *Compare Gregg v. Lawson*, 732 F. Supp. 849, 853 (E.D. Tenn. 1989) ("The several references to and procedures for removal or suspension from the list to compel compliance with the regulations reflect the mutual nature of the relationship established by inclusion on the call list"), *with Lucas v. Monroe Cnty.*,

203 F.3d 964, 978 (6th Cir. 2000) ("The written policies of the Sheriff's Department -- however unfair they may be -- explicitly provide that a wrecker company may be immediately removed from the list upon making a complaint to an unauthorized person. As a result, these policies did not create a legitimate claim of entitlement to remaining on the tow call list even after making such complaints.").

Second, Defendants argue a contract under § 340.036(D) cannot confer a protected liberty or property interest because it does not provide for automatic renewal of the contract. (Doc. 12, at 8). Defendants reference the Ohio Supreme Court's decision in *State ex rel. Cassels v. Dayton City School District Board of Education*, 631 N.E.2d 150 (Ohio 1994), to support the proposition that government contracts are automatically renewed only if the governing statute expressly so dictates. (Doc. 12, at 8). In *Cassels*, the Court examined the language of Ohio Revised Code § 3319.02, *et seq.*, to determine whether it provided for automatic renewal of an employment contract. *Id.* The Court centered its attention on two seemingly contradictory sections of the statute:

> In order to provide time to show progress in correcting the deficiencies identified in the evaluation process the completed evaluation shall be received by the evaluatee at least sixty days prior to any action by the board of education on the employee's contract of employment.
>
> . . .
>
> The establishment of an evaluation procedure shall not create an expectancy of continued employment. Nothing in this section shall prevent a board of education from making the final determination regarding the renewal of or failure to renew the contract of any assistant superintendent, principal, assistant principal, or other administrator.

*Id.* at 153. Because the employee was not evaluated and given notice of his deficiencies pursuant to the 60-day guideline, he argued the statute mandated his reinstatement under a renewed contract. *Id.* at 152. However, the *Cassels* court rejected the automatic-renewal argument on the

11

basis the second phrase expressly states "[n]othing in this section shall prevent a board of education from making the final determination regarding the renewal of or failure to renew the contract[.]" *Id.* at 153. Thus, although the Board of Education was in violation of the statute requiring 60-day notice, the remedy plaintiff sought was expressly barred by the statute. *Id.* at 154.

*Cassels* is distinguishable from the case at bar because the purpose and language of § 340.036(D) suggests the statutory steps for termination must be followed or the scheme would be frustrated. In *Greene County Guidance Center, Inc. v. Greene-Clinton Community Mental Health Board*, an Ohio appellate court recognized the purpose of the 120-day notice period in § 340.036(D):

> The roughly four-month notice is expressly intended to provide an opportunity for renegotiation or mediation. It is impliedly intended to afford the agency time to make necessary arrangements for alternative funding or staff and facility adjustments. Social service agencies must make commitments for personnel, equipment, and premises at which to conduct their activities. Those commitments may extend for several months, so the statute affords them protective notice.

19 Ohio App. 3d 1, 5 (Ohio Ct. App. 1984) (decided under previous version of statute). In analyzing the effect of notice given less than 120 days before expiration of a contract, Ohio courts have "held such notice invalid and void and required funding to continue until the one hundred twenty day notice was delivered." *Id.* (citing *Psychiatric Emergency Evaluation & Referral Serv., Inc. v. Cuyahoga Cnty. Mental Health Bd.*, Cuyahoga App. No. 44497 (Ohio Ct. App. 1982)). And, since the 1984 decision in *Greene County Guidance Center*, § 340.036(D) has been amended to include mandatory language concerning "good faith" collaboration and negotiation in "order to *continue to provide services* and supports to persons in need". Ohio Rev. Code § 340.036(D) (emphasis added). Section 340.036(D) requires funding to continue to an agency until the termination requirements are met. This Court also notes Plaintiff's procedural

12

due process claim does not seek a writ of mandamus, contrary to the plaintiff in *Cassels*. *See* Doc. 1, at 35-36. Instead, Plaintiff seeks damages for the § 1983 claims. *Id.* Therefore, *Cassels* is distinguishable from the instant action.[2]

Because § 340.036(D) confers "benefits . . . and entitlement to those benefits", *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972), the Court finds Plaintiff has sufficiently alleged this prong of its due process claim.

*Deprivation of Interest*

Plaintiff has also adequately alleged a sufficient loss in terms of its protected interest; a substantial amount of its funding came from the Board. (Doc. 1, at ¶ 29). The loss of funding, coupled with the uncertainty of its foreseeable operational viability brought about by Defendants' public statements, resulted in Plaintiff's closure. *Id.* at ¶ 81. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) ("due process protects an interest in the continued operation of an existing business").

*Adequate Procedural Rights*

"The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). For example, a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* In the Sixth Circuit, a plaintiff states a § 1983 procedural due process claim through one of two methods:

---

2. Defendants also provide no law showing "automatic renewal" is a required element of a protected interest under the procedural due process analysis. Therefore, the limitations on rescinding the benefits as set forth in § 340.036(D) establish a protected interest regardless of automatic renewal. *See Med Corp., Inc.*, 296 F.3d at 410.

(1) by demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a 'random and unauthorized act' and that available state remedies would not adequately compensate for the loss.

*Hearns Concrete Constr. Co. v. City of Ypsilanti*, 241 F. Supp. 2d 803, 810–11 (E.D. Mich. 2003) (citing *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991)) (cleaned up). Here, Plaintiff alleges Defendants deprived it of a protected interest as a result of an unauthorized act. *See generally*, Doc. 1.

*Available State Remedies*

In *Kaminski v. Coulter*, the Sixth Circuit held "that a claim for a due-process violation does not lie where the thrust of the plaintiffs' argument is simply breach of contract." 865 F.3d 339, 348 (6th Cir. 2017). The *Kaminski* court continued, reasoning that "[b]ecause a due-process claim is predicated on the deprivation of a constitutionally protected interest *without due process of law*, the availability of a state breach-of-contract remedy defeats the due-process claim." *Id.* (emphasis in original).

Defendants argue that because the thrust of Plaintiff's procedural due process claim is a breach of contract, the post-termination process afforded in a state law breach of contract action provides a satisfactory remedy and removes Plaintiff's claims from Federal due process consideration. (Doc. 8, at 14). Conversely, Plaintiff argues this action does not arise simply as a breach of contract but instead contemplates a statutorily created property interest and the right to contract itself. (Doc. 10, at 16). The outcome of Plaintiff's procedural due process claim hinges on how a relationship between parties who are in contractual privity, but also subject to statutory requirements under § 340.036(D), is defined for purposes of the protected interest. It is therefore

14

necessary to determine the source of Plaintiff's protected interest and whether Plaintiff's protected interest would exist without the "for cause" provisions in the contract.

In Count Five, Plaintiff alleges the Board breached the FY 2020 contract when it conducted a competitive bidding RFP, failed to provide timely notice of non-renewal, failed to negotiate in good faith, and refused to honor Plaintiff's renewal of the contract. (Doc. 1, at ¶¶ 110-13). Defendants cite the Franklin County action in the underlying motion (Doc. 8, at 23), and specifically look to the state court's analysis of section 8.6 of the FY 2020 contract. *Id.*; *see also* Doc. 5-3, at 5-6. The parties do not dispute that the FY 2020 contract contains provisions closely mirroring the procedures set forth in § 340.036(D). (Doc. 8, at 23). The contract, by its express language, creates an interest under its terms.

However, as discussed above, § 340.036(D) is the source of the protected interest for purposes of Plaintiff's § 1983 claim. Even absent any contractual provisions regarding the termination or renewal of the relationship between parties who operate pursuant to § 340.036(D), the parties would still be subject to the notice and good faith negotiation requirements under the statute. *See* Ohio Rev. Code § 340.036(D). While parties such as Plaintiff and the Board may freely add additional terms that govern their relationship under a contract, the constraints established by § 340.036(D) are unaffected.

Because § 340.036(D) creates a protected interest in Plaintiff's continued access to funding independent of the contract, state law breach of contract remedies are not a satisfactory post-deprivation procedure to prevent a claim under § 1983. This case closely resembles procedural due process claims arising from the improper termination of tenured state employees under Ohio law. In those cases, the terms of tenured employment are governed by both an employment contract and state statute. *Loudermill*, 470 U.S. at 535 ("Under Ohio law,

15

Loudermill was a 'classified civil servant.' Ohio Rev. Code Ann. § 124.11 (1984). Such employees can be terminated only for cause, and may obtain administrative review if discharged. § 124.34."). The "for cause" termination provisions are preserved in state statute, and as a result, create a cognizable protected interest for purposes of a federal procedural due process claim under § 1983. *Id.* at 539 ("The statute plainly supports the conclusion, reached by both lower courts, that respondents possessed property rights in continued employment.").

*What Process is Due*

In *Loudermill*, the Supreme Court held that "[t]he right to due process is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in public employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Id.* at 541 (internal quotations omitted). And further, "once it is determined that the Due Process Clause applies, 'the question remains what process is due.' The answer to that question is not to be found in the Ohio statute." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In short, the notice and good faith negotiation requirements found in § 340.036(D) do not determine what process is due. Instead, the Constitution dictates what process is due. *Id.*

To satisfy the due process clause, the deprivation of a protected interest must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* at 542.; *see also, e.g.*, *id.* at 542-43 ("The need for some form of pretermination hearing . . . is evident from a balancing of the competing interests at stake."). As alleged, Plaintiff's interest in continued operational viability cannot be overstated – without the Board's funding, Plaintiff was forced to close its doors. Doc 1, at ¶ 81; *Women's Med. Prof'l Corp*, 438 F.3d at 611. The

16

government has an interest in the expeditious removal of an unsatisfactory partner and the avoidance of administrative burdens. *See Loudermill*, 470 U.S. at 543.

Making all reasonable inferences in favor of the nonmoving party, the Board did not provide adequate process prior to depriving Plaintiff of its protected interest. The Board subjected Plaintiff to a competitive bidding process prior to any hearing or notice. (Doc. 1, at ¶ 38). Discretionary funds were withheld from Plaintiff during the negotiation period. *Id.* at ¶ 68. Defendants made public statements damaging Plaintiff's operational capacity. *Id.* at ¶ 78. And most importantly, the Board took action without notifying Plaintiff of any concerns regarding the services provided. *Id.* at ¶ 7. Indeed, concerns were never raised to Plaintiff until Defendants were under oath in front of the state court. *Id.* at ¶ 57. Taking all allegations in the Complaint as true, no process was afforded to Plaintiff prior to the deprivation of the protected interest. After-the-fact offers of short-term extensions do not remedy the deprivations that occurred months earlier, especially when the Complaint asserts the offers were made in bad faith and pretexted behind a reasonable inference that termination of the protected interest was inevitable while Plaintiff's replacement was being solidified. At this stage, the factual allegations in the Complaint sufficiently establish Plaintiff's claim to relief under a procedural due process claim.

Substantive Due Process

Plaintiff states the benefits conferred under § 340.036(D) establish a federally protected right, and that the lack of due process in depriving the benefits would "shock the conscience of any reasonable trier of fact." (Doc. 10, at 18). Defendants counter stating § 340.036(D) does not confer a constitutional guarantee and there are no allegations showing arbitrary and capricious actions. (Doc. 12, at 11). "[G]overnmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed . . . [under] substantive due

process. One aspect of substantive due process is the right to be free of 'arbitrary and capricious' action by government actors." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (citing *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)). "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal quotations omitted). "Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990).

The Sixth Circuit has not adopted a uniform approach for substantive due process claims. It "has said that this component of [Due Process] comes in two varieties: '(1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 765 (6th Cir. 2020). But other times, the Sixth Circuit "has suggested both prongs are required." *Id.* (citing *Am. Express Travel Related Servs. Co., Inc. v. Kentucky*, 641 F.3d 685, 688 (6th Cir. 2011)). However, the *Siefert* court recognized that recently the Sixth Circuit has utilized the following framework: "first ask whether the plaintiff has shown 'a deprivation of a constitutionally protected liberty interest' and then ask whether 'the government's discretionary conduct that deprived that interest was constitutionally repugnant.'" *Id.*

*Deprivation of a Particular Constitutional Guarantee*

Plaintiff argues its vested property interests satisfy the first prong of the substantive due process framework. (Doc. 10, at 18).

The vested property interests Plaintiff references are the state-created property rights under § 340.036(D) and the contractual rights under the FY 2020 contract. Plaintiff relies on

*Empire Transit Mix, Inc. v. Giuliani*, for the proposition that there "undoubtedly are circumstances in which a breach of contract by a state actor would raise substantive due process concerns. . . . [such as where] the effect is so dramatic and the rights implicated so fundamental that the Constitution provides a remedy." 37 F. Supp. 2d 331, 339 (S.D.N.Y. 1999). In *Empire Transit Mix*, the court held "[t]o the extent that substantive due process protection exists, it must be confined to the protection of interests central to individual freedom and autonomy." *Id.* at 340. The government action in *Empire Transit Mix* deprived the plaintiff of substantial portions of its revenue and had the potential to affect the plaintiff's entire business. *Id.* Even in light of the detrimental consequences to plaintiff's business, "the Court conclude[d] that those interests simply are not sufficiently weighty to warrant their protection under the substantive due process rubric" because no fundamental right was implicated. *Id.*

Sixth Circuit law is in accordance with *Empire Transit Mix*. "Generally, state-created rights do not rise to the level of 'fundamental' interests protected by substantive due process." *Flinchum v. City of Beattyville*, 224 F. Supp. 3d 536, 544 (E.D. Ky. 2016) (citing *Charles*, 910 F.2d at 1353 (internal quotations omitted)). "Instead of automatically being treated as liberty interests that are protected by substantive due process, state-created rights must independently qualify for constitutional protection. Specifically, a state right is only protected by the constitution if it is so fundamental and implicit in the concept of ordered liberty that a failure to protect it would threaten liberty and justice." *Id.* "Most, if not all, state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012). Because Plaintiff's protected interest arises out of a state-created right under § 340.036(D) and state contract law, and the rights to continued funding and adherence to state created procedures are

19

not a fundamental interest under the Constitution, these interests do not rise to the level of garnering protection under federal Substantive Due Process. Instead, as explained above, Plaintiff must proceed under a Procedural Due Process claim.

*Shocks the Conscience*

Although deprivation of a constitutional guarantee is usually required to establish a substantive due process claim, the Sixth Circuit has held that a plaintiff may also be able to establish a substantive due process claim by demonstrating the government engaged in actions that shock the conscience even where no liberty interest exists. *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997). Cases in which courts find government conduct "shocks the conscience" without a constitutional guarantee are exceedingly rare.

Plaintiff argues Defendants' conduct "shocks the conscience" because it was intended to injure and there was no justifiable government interest. (Doc. 10, at 19). In support, Plaintiff states Defendants' following actions, *inter alia*, were arbitrary and capricious: (1) disregarding Plaintiff's property rights; (2) disregarding the procedural scheme for termination of the contract under § 340.036(D) and the FY 2020 contract; (3) singling out and retaliating against Plaintiff; (4) making public misrepresentations about Plaintiff; (5) making up concerns about Plaintiff in the state court proceeding; and (6) replacing Plaintiff with a provider that does not provide full range services like Plaintiff. *Id.* at 19-20.

Plaintiff offers no law or legal precedent showing violations of state-created safeguards for government contract partners rise to the level of shocking the conscience. In *EJS Properties*, the Sixth Circuit held that even where a government official required the plaintiff to pay a $100,000 bribe to obtain a favorable re-zoning vote, the conduct was not conscience-shocking. 698 F.3d at 862 ("Perhaps it is unfortunate that the solicitation of a bribe by a public official does

20

not shock our collective conscience the way that pumping a detainee's stomach does. But, although we can condemn McCloskey for his misconduct, we simply cannot say that his behavior is so shocking as to shake the foundations of this country."). Similarly, in *Charles*, the Sixth Circuit held the government breach of contract (even where statutorily guaranteed) did not warrant substantive due process protections:

> In the present case, we do not believe liberty and justice are threatened, in the constitutional sense, by the failure of the government and its officials to abide by their contract with Charles. Governments breach contracts virtually every day without dire consequences ensuing to the human dignity or basic autonomy of the promisees.

*Charles*, 910 F.2d at 1353. Substantive due process "serves as a check on legislation that infringes on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a 'fundamental right;' or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally 'shocking to the conscious,' as to rise to the level of a constitutional violation." *Chung v. Berkman*, 2013 U.S. Dist. LEXIS 120919, *28 (N.D. Ohio). Violations of state law procedures do not rise to the level of threatening "liberty and justice" in constitutional sense. *Charles*, 910 F.2d at 1353. Defendants are therefore entitled to dismissal of Plaintiff's substantive due process claim.

First Amendment Retaliation

Plaintiff next brings a claim for First Amendment retaliation. "A *prima facie* First Amendment retaliation claim requires the [plaintiff] to establish three elements: (1) that they engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against them that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by their protected conduct." *Anders v.*

*Cuevas*, 984 F.3d 1166, 1175 (6th Cir. 2021) (quoting *Dixon v. Univ. of Toledo*, 702 F.3d 269, 274 (6th Cir. 2012)) (cleaned up).

    *Protected Speech or Conduct*

    "The filing of a lawsuit to redress grievances is . . . clearly protected activity under the First Amendment." *Guindon v. Twp. of Dundee*, 488 F. App'x 27, 36 (6th Cir. 2012) (citing *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010)); *see also R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 440 (6th Cir. 2005) ("The filing of a lawsuit carries significant constitutional protections, implicating the First Amendment right to petition the government for redress of grievances, and the right of access to courts.").

    There is no dispute that Plaintiff filed a Franklin County action on February 4, 2021, to seek relief for perceived violations of § 340.036(D) and the FY 2020 contract. *Rescue Mental Health & Addiction Serv. v. Mental Health Recovery Serv. Bd. of Lucas Cnty.*, No. 21-743 (Franklin Cnty. Ct. Com. Pl.). Plaintiff's lawsuit seeking redress for violations of contractual and statutory rights is protected First Amendment conduct. The first element of Plaintiff's retaliation claim is satisfied.

    *Deterrence*

    In the context of First Amendment retaliation claims, an adverse action is "one that is capable of deterring a person of ordinary firmness from exercising the constitutional right in question." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (internal quotation omitted). "Merely 'inconsequential' actions that cause a 'de minimis' injury are not adverse actions." *Anders*, 984 F.3d at 1177. "[I]n the Sixth Circuit, the 'ordinary firmness' standard goes hand-in-hand with the *de minimis* exception and examines the adverse action objectively instead of the

specific plaintiff's mindset or 'firmness.'" *Lemaster v. Lawrence Cnty., KY*, 2022 U.S. Dist. LEXIS 13996, *19-20 (E.D. Ky. 2022).

The following adverse actions are alleged in the Complaint: On February 17, 2021, the Board sent Plaintiff a "Notice of Substantial Changes to Fiscal Year 2022 Service Contract" (Doc. 1, at ¶ 59); the Board withheld funds from Plaintiff on the basis of "ongoing contract issues" (*id.* at ¶ 68); less than 60-days prior to the expiration of the FY 2020 contract, the Board offered a short-term extension that lacked definite terms with the threat of termination if Plaintiff refused (*id.* at ¶ 71); the Board made public statements denigrating the integrity of Plaintiff and its managers (*id.* at ¶ 80); and the Board's public statements resulted in Plaintiff's inability to obtain necessary staff due to the looming expectation, based on Defendant Board's statements, that Plaintiff's services would not be renewed (*id.* at ¶ 81).

Withholding substantial funds, terminating the service contract, and making public statements that both harm Plaintiff's reputation and ability to hire all constitute adverse actions. As alleged, all greatly hindered Plaintiff's continued operational capacity. As such, Plaintiff has satisfied its pleading burden on this prong.

*Motivation*

"The motivating factor prong of a First Amendment retaliation case can be supported by circumstantial evidence, with temporal proximity aiding in the analysis. Such circumstantial evidence must consist of specific, nonconclusory allegations reasonably linking" Plaintiff's protected activity to the adverse action. *Spencer v. City of Catlettsburg*, 506 F. App'x 392, 396 (6th Cir. 2020) (internal citations omitted). "Where an adverse [] action occurs very close in time after . . . a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection." *Id.* "A defendant's motivation for taking action

23

against the plaintiff is usually a matter best suited for the jury." *Paige v. Coyner*, 614 F.3d 273, 282 (6th Cir. 2010).

Plaintiff has plausibly alleged Defendants' actions were motivated by the protected activity. Defendant Board issued the February 17, 2021, letter less than two weeks after Plaintiff filed suit in Franklin County. (Doc. 1, at ¶ 59). The temporal proximity of the notice satisfies Plaintiff's burden on this factor at this stage. Furthermore, the Board expressly stated funds were not distributed to Plaintiff as a result of ongoing contract issues. *Id.* at ¶ 68. "Though rare, a defendant's own words may demonstrate the protected conduct was a 'motivating factor' for the retaliation." *Miller v. Horn*, 2022 U.S. Dist. LEXIS 137931, *7 (E.D. Mich. 2022). Because the Board's own words suggest the lawsuit was a motivating factor, Plaintiff has adequately pled a retaliation claim, and Defendants' motion is denied accordingly.

Qualified Immunity

Plaintiff brings claims against Defendant Sylak in his individual capacity. In response, Sylak raises qualified immunity as an affirmative defense. "Qualified immunity protects government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. This affirmative defense applies broadly, covering government officials so long as their decision was reasonable, even if mistaken." *Brown v. Weber*, 555 F. App'x 550, 553 (6th Cir. 2014) (internal quotations and citations omitted). "Once qualified immunity is raised, the plaintiff bears the burden of showing that the defendants are not entitled to qualified immunity. The Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Howard v. Knox Cnty.*, 695 F. App'x 107, 113 (6th Cir. 2017) (internal quotations and citations omitted).

Courts must "conduct a two-step analysis to determine whether qualified immunity applies. First, viewing the facts in the light most favorable to the plaintiff, we determine whether the allegations give rise to a constitutional violation. Second, we must assess whether the right was clearly established at the time of the incident." *Id.* (internal citations omitted).

*Constitutional Violation*

"[I]t is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983." *Bloch v. Ribar*, 156 F.3d 673, 682 (6th Cir. 1998). "[G]overnment retaliation for filing a petition violates the literal language of the Petition Clause." *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010) (citing *Gable v. Lewis*, 201 F.3d 769, 772 (6th Cir. 2000)).

Above, this Court determined Plaintiff's Franklin County lawsuit filed February 4, 2021 was protected conduct under the First Amendment's Petition Clause and that Plaintiff's allegations state a plausible claim for relief on the basis of retaliation. Plaintiff also alleges that the Board delegated full discretion and authority to Sylak to revise, amend, or supplement any and all portions of the 120-day notice issued to Plaintiff. (Doc. 1, at ¶ 69). Following this delegation of authority, the Complaint alleges multiple subsequent notices and demands were propounded to Plaintiff, including the eventual termination notice. *Id.* at ¶ 75. As a result of the constitutional violation and the authority delegated to Sylak, Plaintiff has adequately alleged Sylak violated a constitutional right.

*Clearly Established Right*

"The burden of showing that a right was clearly established at the time of an alleged injury falls to the plaintiff. To determine whether a right was clearly established, we look first to decisions of the Supreme Court, then to [Sixth Circuit] precedents, and then to decisions of other

25

courts of appeal, to ask whether these precedents placed the constitutional question beyond debate." *Hall v. Sweet*, 666 F. App'x 469, 478 (6th Cir. 2016) (internal citations omitted). Further, "[q]ualified immunity requires plaintiffs to plead facts making out a violation of a constitutional right clearly established in a particularized sense. That is, the right said to have been violated must be defined in light of the specific context of the case, not as a broad general proposition." *Id.* "This standard requires the courts to examine the asserted right at a relatively high level of specificity"." *Cope v. Heltsley*, 128 F.3d 452, 458-59 (6th Cir. 1997). "[T]he issue of immunity should be resolved at the earliest possible stage of a litigation . . . in order to prevent the litigant from having to endure pretrial matters such as discovery." *Barrett v. Harrington*, 130 F.3d 246, 252 (6th Cir. 1997) (citing *Anderson v. Creighton*, 483 U.S. 635, 647 n.6 (1987)).

Plaintiff argues both its statutory right under § 340.036(D) and the First Amendment right to be free from retaliation were clearly established.

### *§ 340.036(D)*

Plaintiff first argues that § 340.036(D) contains language mandating Defendants negotiate in good faith and that the failure to do so violated a clearly established right. (Doc. 10, at 22). However, "[a] state statute cannot 'create' a federal constitutional right." *Harrill v. Blount Cnty.*, 55 F.3d 1123, 1125 (6th Cir. 1995). "The violation of a right created and recognized only under state law is not actionable under § 1983." *Id.* Therefore, violations of § 340.036 cannot serve as a clearly established Constitutional right.

### *First Amendment Retaliation*

Plaintiff next looks to *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997) to show the right to be free from government retaliation is a firmly established constitutional right. (Doc. 10, at 22). In *Barrett*, the defendant judge made false accusations of criminal stalking in retaliation

against a man attempting to reveal the judge's illegal conduct. 130 F.3d at 248. *Barrett*, consistent with other courts throughout the Sixth Circuit, held that "it is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983." *Id.* at 264; *see also Abdulsalaam v. Franklin Cnty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 584 (S.D. Ohio 2009) (social worker "should have known that fabricating evidence against a mother to punish her from complaining about an FCCS investigation" violated First Amendment rights); *Thompson v. Ohio State Univ.*, 990 F. Supp. 2d 801, 812 (S.D. Ohio 2014) (no qualified immunity at the motion to dismiss stage for a university official who "retaliated against [p]laintiff for exercising her First Amendment right to complain about perceived race discrimination by Dr. Schweikhart in the Master's program"). Here, there is no doubt that Plaintiff's February 4, 2021, lawsuit was protected under the First Amendment Petition Clause. The Complaint also alleges, through the delegation of full authority, that Sylak individually made the decision to initiate the contract termination process. (Doc. 1, at ¶ 75).

"The courts that have considered qualified immunity in the context of a retaliation claim have focused on the retaliatory intent of the defendant". *Bloch*, 156 F.3d at 682. "This is because the unlawful intent inherent in such a retaliatory action places it beyond the scope of a [public official's] qualified immunity if the right retaliated against was clearly established." *Campbell v. Mack*, 777 F. App'x 122, 136 (6th Cir. 2019) (internal quotation omitted). Plaintiff alleges Sylak "destroyed [its] business, [its] ability to continue in its chosen business, and maligned and damaged [its] reputation in the community in retaliation . . . for successfully challenging an illegal Board (and Mr. Sylak-driven) competitive contracting process that violated the clear terms of Chapter 340." (Doc. 1, at ¶ 6). Because the Complaint adequately alleges Sylak's

retaliatory intent, the Court presently denies qualified immunity on this claim. Sylak may renew his motion at a later stage of this litigation when the evidentiary record is more developed.

State Law Claims

Defendants move to dismiss Plaintiff's state law claims for breach of contract and violations of § 340.036(D) and argue this Court lacks supplemental jurisdiction. (Doc. 8, at 22). Alternatively, Defendants invoke the "law of the case doctrine" and ask this Court to limit Plaintiff's breach of contract claim in accordance with rulings made by the Franklin County court in *Rescue Mental Health & Addiction Serv.*, No. 21-743. For the following reasons, Defendants' motion is denied as to the state law claims.[3]

*Supplemental Jurisdiction*

"In any civil action in which the district court has original jurisdiction, it also possesses 'supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Sexstella-Wright v. Sandusky City Sch. Dist. Bd. of Educ.*, 258 F. App'x 837, 839 (6th Cir. 2006) (quoting 28 U.S.C. § 1367(a)). "Claims form part of the same case or controversy when they derive from a common nucleus of operative facts." *Id.*

---

3. On December 30, 2022, the Ohio Council of Behavioral Health & Family Services Providers, Ohio Alliance of Recovery Providers, and Ohio Children's Alliance filed a Motion for Leave to file Brief as *Amici Curiae* Instanter. (Doc. 17). Defendants opposed. (Doc. 18). Movants argue Defendants violated the clear and unambiguous language Ohio Revised Code 340.036(D) and provided this Court with proposed changes to Ohio Revised Code 340.036(D) currently under consideration by Ohio's General Assembly. In its motion for judgment on the pleadings, Defendants argue it is entitled to judgment on Plaintiff's state law claims because this Court lacks supplemental jurisdiction. (Doc. 8, at 22). Defendant argues in the alternative that Plaintiff's state law claims should be limited by the "law of the case doctrine". *Id.* Because the outcome of Defendants' motion (Doc. 8) does not hinge on the substantive issues discussed in Movants' Brief, Movants' Motion for Leave (Doc. 17) is denied without prejudice. This Court invites Movants to refile their Brief if the issues discussed therein are raised at later stages of this litigation.

Defendants only argue this Court should decline to exercise supplemental jurisdiction over the state law claims because the federal claims lack merit. (Doc. 8, at 22). Because this Court has found Plaintiff's procedural due process and First Amendment claims plausibly show Plaintiff is entitled to relief, this Court will exercise supplemental jurisdiction over the state law claims. Defendants' motion is denied accordingly.

*Law of the Case Doctrine*

Defendants alternatively ask this Court to limit Plaintiff's claims in accordance with findings of fact and law made by the Franklin County court. *Id.* Defendants list five findings it represents the Franklin County court made. Defendants' request is improper for several reasons. First, a review of the Franklin County opinion shows Defendants overstate the findings of the court in their favor. Second, Defendants pick and choose favorable findings while ignoring unfavorable ones. Lastly, invocation of the law of the case doctrine is improper here because the issues were never previously litigated in this Court.

Defendants assert the Franklin County court made the following findings:

(1) the MHRSB has the authority to issue an RFP and "the competitive process utilized through the RFP in this case" did not violate the requirements of Ohio Revised Code §340.036;

(2) the 120-day notice issued on February 17, 2021 satisfied Ohio law, in particular, Ohio Revised Code §340.036(D);

(3) while defendants' 120-day notice was not sufficient on its face to satisfy the notice requirements of the FY20 contract, that contract "unambiguously allows supplementation" of that notice where the supplemental information was acquired after the date of the initial notice;

(4) defendants' May, 10, 2021 notice to Rescue was "supplemental in nature;" and

(5) the MHRSB properly authorized defendant Sylak to amend or supplement its 120-day notice to Rescue consistent with Ohio Revised Code §340.04.

(Doc. 8, at 23). However, a review of the summary judgment opinion issued by the Franklin County court demonstrates it actually made the following findings of fact and law:

- The February 17, 2021 notice was sufficient to satisfy the initial notice element of § 340.036(D). (Doc. 5-3, at 34). There is no analysis into the remaining requirements set forth in § 340.036(D).

- The February 17, 2021 notice did not satisfy the FY 2020 contract provisions. *Id.*

- Notice may be supplemented under the FY 2020 contract. *Id.* at 35-36.

- The May 10 and May 26, 2021 notices were supplemental. *Id.* at 37.

- The Court could not decide as a matter of law whether the supplemental notices cured the insufficient February 17, 2021 notice. *Id.* at 38.

- The Board was permitted to delegate authority to Sylak. *Id.* at 38-39.

Underlying the Franklin County court's findings is the limited nature of the opinion, as recognized by the court: "The parties have agreed to limit the scope of this decision to whether, as a matter of law, the notice required under R.C. 340.036(D) and the FY 2020 can be supplemented." *Id.* at 35.

### Law of the Case Doctrine

Defendants ask this Court to adopt the findings of the Franklin County court by way of the "law of the case doctrine". "The law-of-the-case doctrine 'provides that the courts should not reconsider a matter once resolved in a continuing proceeding.'" *GMAC Mortg., LLC v. McKeever*, 651 F. App'x 332, 338 (6th Cir. 2016) (quoting *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015)). "[T]he law-of-the-case doctrine is not used to prevent relitigation of the same issues across different cases; rather, the purpose of the law-of-the-case doctrine is to ensure that the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *Id.* at 339 (emphasis in original). Thus, Defendants' reliance on this doctrine is

30

misplaced because they are attempting to prevent the relitigating of issues in different courts.[4] As such, Defendants' motion is denied insofar as it asks this Court to adopt the state court's opinions under the "law of the case doctrine".

### CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Judgment on the Pleadings (Doc. 8) be, and the same hereby is, GRANTED IN PART as to Plaintiff's substantive due process claim, and DENIED IN PART as to all other claims.

 s/ *James R. Knepp II*         
UNITED STATES DISTRICT JUDGE

---

4. Defendants mistakenly rely on authority discussing collateral estoppel to argue this case should be limited by the law of the case doctrine. Nevertheless, this Court is unconvinced that any arm of *res judicata* is appropriate in this matter. However, because the parties did not brief the issue of collateral estoppel it is not properly before the Court and judgment is reserved.